Good morning. May it please the Court, my name is Nicholas Ranjan and I represent the appellant Robert Lincoln. Judge Slover, may I please request three minutes of time for rebuttal. There are two issues before the court. The first issue is whether the application of the state procedural rule by the Pennsylvania Superior Court, essentially a waiver rule, was adequate so as to bar Mr. Lincoln's effective assistance of counsel. As we argued in our brief to this court, it's the government's burden to establish adequacy or to show that in the vast majority of cases that this waiver rule, that Pennsylvania state courts have applied this waiver rule in a regular and consistent manner to that done by the Superior Court in this case. Very simply, the government did not meet its burden. To the contrary, we pointed the court to two rules of criminal procedure, Rules 907 and 905B, as well as decisions by the Pennsylvania Superior Court, including the Parks decision, which is really factually indistinguishable from this case, and a recent decision even from the Pennsylvania Supreme Court in a case called Commonwealth v. Pitts, all of which state essentially the opposite of what the Pennsylvania Superior Court did here. That is that PCRA petitioners can raise their claims in response to a Rule 907 notice, just like Mr. Lincoln did in this case, and have those claims adjudicated on the merits. Without an independent and adequate state law ground, there can be no procedural default. I know the government in its brief, really its principal argument in response to our contention with respect to the inadequacy of the state claim that Mr. Lincoln essentially conceded adequacy in the district court. We responded to that waiver argument in our reply brief, but if I may, I'd like to just sort of amplify. I mean, this is a habeas case, so we're operating under AEDPA. Don't we have to accept the state court's determination that there was a waiver? I mean, can we say that there wasn't? Can we go behind that determination? In fact, the addressing the adequacy of the state procedural rule, that's a question of federal laws. The Supreme Court has held many times, most recently last term, in a case called Cohn v. Bell. I think where you see deference owed under AEDPA is to the presumption of factual correctness to state courts' determinations with respect to the facts, but here the state courts never got to that point because under this procedural bar, it concluded that Mr. Lincoln's was procedurally defaulted. Couldn't one look at what he said in his, well, I would really, that's just the other side, to the 907 and say, well, he did as best as he could say that I didn't have, my counsel didn't appeal, and I wanted my counsel to appeal. Absolutely. In his rule 907 notice, I will admit that Mr. Lincoln's pro se pleadings are not clear throughout, but in his rule 907 notice, I thought he was perfectly clear. He said, I instructed my attorney to pursue the appeal, but to no avail, and then he cited a number of Pennsylvania cases, and that should have really put his, I'm sorry, his response to the 907 notice. That's when he raised it. So I guess that's the issue. Right. To me, the issue was, is he allowed to do that for the first time then, or does he waive it by not doing it in the petition and waiting to that point? Right. And I thought that was the whole, maybe I'm on the wrong page. No, that's absolutely right. Yeah, and I mean, the way. I couldn't figure out what the law is on that. I was very confused by that one case, started with a D. Oh, Derrickson? That one. Yeah. Because I couldn't figure from the facts recited in that case exactly what that person had said in their response. Right. I mean, as far as I can tell, and Derrickson is unclear, it's a pretty short opinion, so it's not too helpful, but I think what the person said in his response is sort of to explain the government interference exception to the statute of limitations, and we distinguished Derrickson in our brief as dealing with sort of exceptions to the statute of limitations and the statute requiring a petitioner to set forth exceptions in the petition. Why does that distinguish it? Well, the statute says you have to set forth exceptions in the petition. In the petition itself. But here's one, Derrickson, and perhaps the easiest way to distinguish Derrickson is this court can't even look at Derrickson because it was issued in 2007 and the time of the purported procedural default in this case was in 2005. And this court has held that when assessing the adequacy of the state procedural rule, I think most recently in a case called Albrecht v. Horn, you look to how Pennsylvania or how the state courts apply decisions at the time of the purported procedural default, which would have been in 2005. So you can't even look at Derrickson, which was in 2007. You said that, what is it, the 905 provision gives us an answer here. I couldn't figure out how that gave us an answer here. Because it talked about defective petitions, and I don't know, the description defective petition didn't seem to fit with what I saw here. Isn't a defective petition something that's technically defective as opposed to is missing the claim? Well, I think the comment to Rule 905 makes clear that defective petitions are ones that lack particularity or are inadequate for any reason. It's a very broad definition of defectiveness. And the way the argument goes is that in Mr. Lincoln's original PCRA petition, he alleged a claim of general ineffective assistance of counsel. He just said one of his claims was my counsel was ineffective and it undermined the truth-seeking function. He didn't say my counsel didn't appeal. Then Mr. Lincoln did describe that ineffective assistance of counsel in his letter response. His 907. Correct, in his 907 response. So the argument is at that point, the PCRA court knew that there was a petition that lacked particularity, that his own counsel recognized that, and here comes Mr. Lincoln explaining with some level of particularity what he meant in his original petition. No, go ahead. The government argues essentially saying about this default, so what? That the only thing he could claim as to the voluntariliness of this plea has already been reviewed, and are we prohibited from giving this sort of a strickland look and plowing it all the way back? Yeah. Because otherwise, the whole default thing is a rather pyrrhic victory for you. Right, and I would suggest to the court that we're not here in some type of academic exercise, that we believe that Mr. Lincoln has good claims to make on a reinstated direct appeal. What are they? Well, one of the claims I think, we allude to one claim in our reply brief, and that is that the facts to which he stipulated during his guilty plea did not amount to the offense of attempted murder, because he never stipulated to any facts that would give rise to a specific intent to kill. But I think that the stronger argument is, and the government concedes in its brief that we can make this argument on a reinstated direct appeal, and that is that his sentence was illegal or invalid. And that's an argument that a petitioner or a criminal defendant can make without preserving it in the trial court for the first time on direct appeal. Wait a minute, I don't understand that. First of all, he pled guilty. Sure. And so you're saying it's not, you're not challenging the guilty plea? I thought the whole point that he tried to make was that the guilty plea wasn't voluntary, informed, etc., and the state courts and the magistrate judge all rejected that. Right. So what does the sentence have to do? I mean, the sentence is not a constitutional issue, is it? So we can't, why would the sentence, why would the state sentence come up on a habeas? It wouldn't. This would be what he would raise on a reinstated direct appeal from his original conviction. So if this court issues the writ or remands for the district court to consider issuing a writ. In any of the filings, the PRCA and any of that, I can't find where he did challenge his sentence ever. Well, he never had the opportunity to do so because that's something he would have raised on a direct appeal. But wasn't there a PRCA in this case, too, a post? Yeah. He didn't raise it there, and so it would have been defaulted going up to the appellate court, would it not? Well, I don't know if this necessarily is a constitutional issue. You were raising a state law. I don't see it as a constitutional issue either, but you're saying it was something that he could raise, but that he hasn't preserved at any place, and he would have to do that in his post-conviction or post-sentence. I don't think he would have had to preserve it because I think this is an issue that he would raise on a reinstated direct appeal, which he never had the opportunity to have. Why hasn't he waived that? Well, there are no other- Because he never raised it. I guess I don't understand how he could raise the legality of his sentence as a matter of state law through PCRA or habeas proceedings if it doesn't rise to the level- Well, not habeas. So educate me on Pennsylvania law. What's PCRA proceedings? What are they for? It's essentially a post-conviction relief act, and so it's a way to- So it's like a habeas. Exactly. It's another layer of post-conviction review where you would raise constitutional errors like ineffective assistance of counsel. Oh, okay. So this is not normally the place where you would raise your challenge to the sentence. Exactly. Do that on direct appeal is what you're saying. Exactly. We'll see if the government thinks that's- And if I could just explain, I haven't done an exhaustive search of all the appellate grounds that Mr. Lincoln could pursue on a reinstated direct appeal because I don't think this court needs to go that far to reinstate his direct appeal under the reasoning of Flores Ortega. But if I had the opportunity to brief a direct appeal for Mr. Lincoln, I would argue that his sentence was illegal, namely because the sentencing judge took into account an erroneous consideration that aggravated assault and attempted murder are separate offenses that carry separate consecutive sentences. The trial court or the sentencing judge said as much on the record and told Mr. Lincoln, look, you're looking at 85 years in prison. That was wrong. He was not looking at 85 years in prison. Aggravated assault and attempted murder merge for sentencing purposes. So what he was looking at was 40 years in prison. Isn't that what he got? Yeah. He ended up getting 40 years in prison. So what incentive would it have been for Mr. Lincoln to have pled guilty to accept the maximum amount of sentence possible? Had the trial court known that aggravated assault and attempted murder merge and had taken that into account, our argument would go that he wouldn't have sentenced Mr. Lincoln to the absolute maximum. Again, this is something that, you know, I don't know if this will succeed before the Pennsylvania Superior Court, but it's something Mr. Lincoln's entitled to raise on a reinstated direct appeal. You mentioned Flores-Ortega, and I was going to ask the State in detail about Flores-Ortega, but do you think Flores-Ortega is saying that we don't even consider prejudice as part of the Strickland analysis? I read Flores-Ortega as dealing with a spectrum of circumstances, and our side of the spectrum where Mr. Lincoln stands, where a petitioner instructs his counsel to pursue an appeal and his counsel does not abide by those instructions, prejudice is presumed. That's one end of the spectrum. At the other end of the spectrum is where there's no express instruction, and Flores-Ortega sort of dealt with this. Is there a duty to consult with your client with respect to his appellate rights? There, I think, prejudice is largely presumed, but the Court noted that it's going to be very fact-specific under those circumstances. You take into account a number of things, but where we are, which is actually where the Supreme Court was in a case called Rodriguez from 1969, prejudice is presumed. So I think we have the easier case. Has any state court found that Mr. Lincoln asked his lawyer to appeal? No, no state court has reached that determination. And you're saying that we should find that based on what is before us? I mean, obviously, if he didn't ask the lawyer to appeal, then there's nothing here. Right. And all you have, really, on that point is Mr. Lincoln's statements in the record, his response to the Rule 907 notice, his habeas petition, which is a sworn document. In a certain respect, I would probably agree with the government that remand for an evidentiary hearing would probably be appropriate. I guess I can't see how the Court can, on a cold record, issue a writ here. To me, it sort of makes sense to remand. The Pennsylvania courts did never reach this issue. Right. Pennsylvania courts never reached it. So on a remand, I think that you hold an evidentiary hearing. The district court examines this all under sort of a de novo standard because ADPA wouldn't even apply. That's sort of the ADPA presumptions. That's right. If the Pennsylvania courts found he never effectively asked for her name, Ms. Cook or something like that, to appeal, then there's no. But, of course, if you read Flore Sertigia, it says you have to consult with your client. Right. Are you pro bono? I am pro bono, Your Honor. I figured that you also are. So the same things I said to counsel before certainly apply. Thank you. I was going to mention it, but I didn't want to fish for compliments. Take them when you get them. Well, yeah, I think you've done a wonderful job. Thank you. If there are no other questions. No, we'll get to them. You've asked for reserve rebuttal, right? Yes. Thank you. Okay. Where is K and L Gates? Is that Pittsburgh? Yes. Okay. And did this come up in the western part of Pennsylvania? No, it's an eastern district case. Really? Good morning, Your Honor. As many of you please the court. I'm Assistant District Attorney John Goldsboro from the Philadelphia District Attorney's Office, and I represent the Commonwealth appellees and federal habeas respondents below. On December 1, 2002, Lincoln beat Cheryl Rivers almost to death, blinded her in one eye, left her for dead in a pool of her own blood. With severe brain damage, she had three brain operations. It was a horrible crime. Horrible crime. And every state and federal court to touch this case agrees that his plea is valid, including the sufficiency of the recitation of the facts, the perfectly legal sentence, and the fact that Lincoln here got to negotiate that several of the charges were dropped during the course of the transcript. You can actually see that there are times when they go back to renegotiate. He got a better deal than he came in with. He started out with 20 to 40, ended up with 16 to 40, and the charges of possession of an instrument of crime and theft were also dropped. Certification of that second claim, the validity of the plea, was denied by this court. Nobody in his right mind would have gone to trial on these facts given the evidence that he knew we had. We not only had two witnesses identifying him, placing him at the scene aside from the victim, we also had the victim naming him, picking him out of a photograph, and we had blood on the radio that showed that he used this as an instrument of crime. That's part of the recitation of the facts. It caused him to go back and say, well, I didn't say that in my confession, which is, in fact, the other piece of evidence that makes it incontrovertible that he was guilty of attempted murder, beating her about the head. The appellant says that, I want to talk about the, I call it the PRCA, PCRA. Two things on that. He says he could raise the issue of the legality of the sentence. Can we look at Pennsylvania law and the sentence he received and say it was not illegal, or does that demand a remand? I think it's plain on the record. It's plain in the guilty plea transcript, which I attached as an exhibit. Next question. Is my understanding of Pennsylvania law wrong? It's old. I have to tell you he was a Pennsylvania trial judge. Twenty years ago. Twenty years. I'll watch my step. The fact that he didn't raise this in his PCRA is a default, is a waiver. Is that correct? That's correct. Okay. Yes. So your PCRA proceedings are not limited to just the kinds of things you would have in habeas, ineffective assistance of counsel. It could be every mistake that could be the subject of direct appeal? As long as those claims are not already waived. Yes, Your Honor. And here, I'd like to talk a little bit about the mechanics of that. How do I know that? Pardon me? What tells me that you can raise every kind of error in a PCRA case? He's a Pennsylvania prosecutor. There are certain errors that have been lined out on the form, of course. That's one thing. But if you look at the statute. What does that mean? Well, the statute itself lists the kinds of errors that may be raised. And so it is a limited universe of errors. But it's beyond what may be raised, I believe. It's not limited to Pennsylvania constitutional law. That's correct. And it's not limited to simply ineffective assistance claims either. Okay. And it's not limited to constitutional law. Right. There's a form in the rule book that shows you what kind of claims. Right. And the form mirrors the statute that has the list of errors. Does it include the sentence? Yes, absolutely. That's one of the claims that may never be waived, the legality of the sentence. And this is in the statute? Yes. That's correct. Do you happen to know the number of the statute? It's a 42 PACS. I think it's 9543 or something like that. 43, 44, 45. Okay. But in any event, what happened here is we have PCRA court receiving the petition, which is not in any way defective, having looked at thousands of these. This is a quite specific one. And appointing counsel who files a Finley letter. And if you take a look, Wentworth Vedder's Finley letter. The Finley letter is what we would call in the federal court, like an Anders. It's more or less like that, except it derives from Pennsylvania v. Finley. It's one step removed, of course, from the direct appeal procedure. This is collateral appeal. So it's counsel saying, I've evaluated all the claims on collateral appeal, or on collateral review, and I cannot find any of merit, and here is why, and then requesting to withdraw. It's more or less similar, but it's a little bit abbreviated, but the court nonetheless does have to take a look at it, and did in this instance. The letter is particularly comprehensive, and there are five claims that he raises, among which are the validity of the plea and counsel's ineffectiveness for failing to withdraw the guilty plea. There is one general ineffectiveness claim that he makes. It's not as if counsel says in the letter, oh, this entire PCRA petition is vague, unspecific, and, you know, needs to be fleshed out, and I don't know what he's talking about. That's not so. It's one claim he says is not specific. In the initial petition, the petitioner checks off a box saying, I didn't have an appeal. His other claims are ineffective assistance claims. So he's not bringing in the petition a claim that counsel was ineffective for failing to file an appeal. Yeah, but what about this, I didn't have an appeal? Well, so he raises that in his response letter to this notice, which is required to be sent out. The purpose of the notice is to allow correctable defects to be addressed, or as a safety valve if there's any real problem of substantive rights to be corrected. But it's not a vehicle for raising amended claims. Otherwise, this would be sort of an infinite process. And one of the things he says in his petition is ineffective assistance of counsel generally, besides the stuff that was specific. Then he says in the response, by the way, I told him to appeal, and he didn't. It just seems like a red flag, and you would expect the court to say, there's no evidence of any of that. Well, he said many things. He didn't just say that. He said, I want a plenary hearing. I want you to order counsel to withdraw his Finley letter and to file an amended petition, which is the only other thing that counsel could do. Counsel either files a Finley letter or an amended petition on the petitioner's behalf. One or the other. He says, no, he says, I want counsel, I want you, court, to please order counsel to withdraw this Finley letter, which he's already filed after evaluating the case comprehensively, and instead take the other route and file an amended petition on my behalf, saying, yes, there are claims that are arguably meritorious. And he says, I wanted counsel at the guilty plea to withdraw my guilty plea. I wanted counsel to reconsider. When he says, I want a counsel to file an amended petition, how come the court just doesn't say, okay, we consider what he's saying here, an amended petition, and we find it unacceptable? But nobody does that. Well, it's, A, I don't think he was actually asking the court. Specifically, I'd like to include another claim in my petition. I think he was saying, I want counsel to file an amended petition on my behalf, and there's a whole universe of claims that I'd like him to pursue. But he's pro se. He's pro se. Yeah, but why shouldn't the court, I think, what, why shouldn't the court have gone further into that? And, I mean, didn't he give the court notice? Wasn't, isn't that adequate notice that he thinks counsel was ineffective in not doing that? Well, there are general rules of pleading in Pennsylvania, and one of them, and it's not set forth in 905 or 907. It's broader than that. It's in the case law, and it's broader than just PCRA practice. Claims have to be in petitions. It wasn't in his petition. Now, this procedure of giving notice is simply a safety valve for correctable defects in form. This was not a defective petition. And sending out the notice. Opposing counsel says the commentary is broader and that it's not just technical defects. I disagree. I disagree. It's sometimes, the courts under 905 and 907, this is a separate area of law, have the discretion to allow amendments in whatever form they may be, especially in pro se cases. And that is exactly the same practice that this court follows and the district court, the federal district court follows. But that doesn't mean that there is a right to file an amended petition. And here, I'm just speculating. But here, certainly, the court received it and read it. There's no right to have it acknowledged, but it's on the docket. And certainly, the court, to the extent its decision can be discerned, it denied any request to force counsel to withdraw the Finley letter and file an amended petition. It denied any request to construe this letter as a motion to amend. And it was within its discretion to do so. It doesn't have to give a reason because the claim was not in the petition. I think there's a real danger here. If we're talking about declaring a State rule of procedure inadequate, that first there's the affront to the victim, to the State, to the validity of the final, the finality of the valid plea in the sentence. If the court were to find that that rule, that the court has to send out a notice and wait a while before actually dismissing, were inadequate, then that notice of intent procedure would become an endless loop, an opportunity for petitioners to add in new claims every time the court has to send out a notice. Certainly, the consequences would be, as the Kindler Court speculated, the United States Supreme Court and Kindler, that the State would get rid of that procedure and that would be inequitable. This is here as a safety valve, an equitable safety valve. Could I shift you to the habeas part of this? Yes, Your Honor. Rather than the State part of this, I read Flores, well, one could read Flores Ortega to say that notwithstanding the ineffectiveness, we don't have to get into that because you have to look, you don't have to, we would ordinarily say, my colleagues say, and I dissent, but colleagues say, that if you can't show prejudice, you don't get habeas. And Flores Ortega seems to say that when the alleged defect is failure to appeal, prejudice is presumed. Now, can you show me where, and I just read it again right before coming here, can you show me where in Flores Ortega the majority of the Supreme Court says, and that was written by O'Connor who wrote Strickland, where they say you still have to show prejudice? Your Honor, it is not our position that Flores Ortega says that. Our position is that Flores Ortega says not that prejudice is presumed, but rather that the prejudice is that you have to show that you would have taken an appeal. But this is an unusual case. Because the universe of... That's the rule. I think you just stated it properly, that's what the case stands for. You have to show you would have taken an appeal. You would have taken an appeal. That's correct. I do not believe that my opponent has any evidence on that. He's been alleging that he told counsel to file an appeal lately. He didn't, of course, begin alleging that until his response letter to the 907 notice. But I did actually go back, and as I submitted with the agreement of my learned opponent, found that Mr. Lakin, plea counsel, had filed a notice of appeal on the 30th day. And he withdrew it. Withdrew it, yes, correct. I think it was about a week later or so. Why was it that ineffective? Actually, Your Honor, I gave him a call just to see if he had any recollection of this. And he said, I don't have a specific recollection, but my practice is, if I have not heard from the defendant by the 30th day, which I always mark on my calendar, I file a protective notice of appeal. And then sometimes I'll hear a few days later from the defendant saying, no, I don't wish an appeal. Now, here, there would have been very good reason not to take an appeal. It's risky. He got a very good deal here, 16 to 40. And as I said, other charges were dropped. He managed to even negotiate out the ---- But we should, excuse me for interrupting, but so we should assume that from the taking of the appeal and then the withdrawal of the appeal a week later, that Mr. Lincoln, that suggested he didn't want an appeal. I believe that is the most likely scenario. So that's the other thing. And I did, in fact, also, just to see, I ordered the notes of testimony from the date on which this was dismissed, noticing that that had not been done, just to see if there was any statement about that. But, Your Honor, I would like to just simply touch on a couple of points here, if I may, as I see my time is ---- Well, did the notes of testimony tell you anything that would help us? They have not yet arrived. Oh. We're working on that. The transcriptionist ---- So these are the notes of testimony of the guilty of what? The date on which the PCRA petition was dismissed formally on the record. Sometimes the PCRA judge makes a brief statement on the record and doesn't just do it on paper. So that's possible. You know, even though, as you seem to say, that you can raise these things in PCRA proceedings, I mean, aren't direct appeals different? Don't you have ---- Aren't there more rights in a direct appeal? A PCRA proceeding doesn't substitute for a direct appeal, does it? I'm just finding it odd, this argument that because he didn't do it in this post-collateral relief proceeding that ---- Post-conviction. Thank you. Post-conviction, which is a collateral relief proceeding. Yes, Your Honor. That that's the end of all this. I don't remember any case like that anywhere. I haven't seen a case like this, actually. I think it's somewhat unique. But it is true that errors on collateral review aren't even cognizable on federal habeas, which I find kind of an ironic aspect of this because that's not what's being alleged, but it's coming in through the inadequacy argument, which I personally find kind of unusual. Yes. I'd say this is all unusual. Yes. From many different directions. But I see that my time is out. I just wanted, if I might, continue. So direct ---- So the PCRA proceeding doesn't substitute for a direct ---- a right of direct appeal?  However, the claims may be raised that would have been pursued on direct appeal only through a claim that counsel was ineffective for failing to pursue those claims. But nonetheless, the underlying claim is the claim that would have been raised on direct appeal. The ---- I think the other aspect of this, and I recall Judge Nygaard was questioning my opponent about this, is simply the bottom line. There really is no point to any factual development here because there really is only one claim that could have been pursued on direct appeal. You just said something that I didn't understand from your earlier answer, that what may be raised in the PCRA, but must it be raised in the PCRA before it is raised before the Pennsylvania Appellate Court? Is it a requirement that it be raised? Absolutely. No new claim may be raised before the Appellate Court. I've seen these crazy things where because the direct appeal was denied, and even though there's absolutely nothing that can be raised on direct appeal, the thing is granted, and then there's a very short proceeding somewhere, and then it all goes away. But because of the Supreme Court decision, there's courts that don't look behind what you're going to do after you find that there's an issue as to whether the person asked for an appeal. If you understand that question, answer it. I'm not sure. Unfortunately, I'm not sure I understand it. The problem is you don't have to show prejudice. The question is why are we even asking anything other than, you know, did somebody deprive him as a right to a direct appeal? Well, that's my question. Can we look at these things to see what's going to happen down the road? I believe so as a matter of practicality, Your Honor, and as a matter of conservation of judicial resources in this time of tight budgets. I think there's only one possible claim that could have been raised on direct appeal that's already been adjudicated meritless. You mean the voluntariness, whether he was informed? It's not just the voluntariness. It's the validity of the entire plea procedure. Because the claim that was denied was counsel was ineffective for failing to withdraw the plea. And as part of that, all of the courts that have looked at it have found the plea valid. And it certainly is if you look at the plea procedure. Thank you, Your Honor. Thank you. Mr. Remgen, I wish you would respond to Mr. Goldsboro's assumption. If he didn't ask counsel to appeal, then we're nowhere. So the whole thing depends on whether you can read what he said in his response to the 907. Right. And Mr. Goldsboro says, and really using one's experience, it sounds rational, counsel filed a notice of appeal. I mean, if he had never filed a notice of appeal, then we get into Flory Sertagic. Right. But he did file a notice of appeal. And then he withdrew it a week later. And one can't assume that he just said, oh, I filed a notice of appeal, and now maybe I'll take it away. You have to assume that there was some communication with his client before he did that. Right. What's wrong with that assumption? And if he's right, then we don't have a habeas procedure. Well, I think there needs to be some kind of discovery or fleshing out of these facts. Because, you know, if Mr. Lakin, Mr. Lincoln's counsel, just simply filed this precipice for a discontinuance without consulting with Mr. Lincoln's counsel. Sure. But we don't. But there's no basis for us to assume that a lawyer who did the right thing by filing the notice of appeal then did the wrong thing a week later. I mean, there's just, it's, I mean, after all, we've all been lawyers for a long time. Right. There's just no basis for that. Well, I guess my response is I'm not sure that that issue is teed up for this court to decide on a cold record. You know, I could speculate as to a number of reasons why Mr. Lincoln's counsel decided to do what he did. Why, did he have a headache or something? Well, you know, he filed the notice of appeal. The docketing statement was due on a certain day. He decided not to file the docketing statement because he thought Mr. Lincoln didn't have a shot at any of these issues on a direct appeal. But Mr. Lincoln wanted him to pursue a direct appeal because he thought he got railroaded. That could have been, that's a plausible explanation for the events. And if you look, actually, in Mr. Lincoln's PCRA petition, he attaches a few exhibits, including correspondence between himself and his attorney, where I think his attorney's letter to him states, well, you know, you asked about pursuing this appeal, but guess what? You really badly injured this woman and almost suggested that he wasn't going to represent him on a direct appeal. These are fact issues that I think are more appropriate for, you know, the trial court to deal with at an evidentiary hearing. To go back to Judge Rustani's line of questioning, you asked Mr. Goldsboro about, you know, can this court look behind the absence of a direct appeal right? And Mr. Goldsboro said, well, as a practical matter, this court can look at what Mr. Lincoln might be able to raise on a reinstated direct appeal. I think Flores-Ortega is clear that as a constitutional matter, as a matter of Supreme Court precedent, this court can't do that. That prejudice is presumed under these circumstances. But if you do look behind that, and this goes to Judge Nygaard's earlier question, the legality of the sentence, you know, I don't have a case at hand, be happy to supplement with the 28J letter, the legality of a It cannot be waived. It's something that the superior court can consider in the first instance. So if that is the concern with respect to the waiver of that claim on a reinstated direct appeal, and this court wishes to examine those sort of merits issues, I would urge the court to look at Pennsylvania law or allow myself to file a 28J letter brief. Thank you very much. Thank you. It was excellently argued from both sides. Good arguments. Thank you. Whether or not all the questions made sense. We're not judging.